<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOLD LION STEEL LLC, ROBERT REBIMBAS, AND RIMON NAHAS, <br><br>    *Plaintiffs*, <br><br> v. <br><br> GLOBAL MERCHANT CASH, INC., d/b/a WALL STREET FUNDING, <br><br>    *Defendant*. | Civil No.: 21-cv-10702 (KSH) (CLW) <br><br><br> <u>OPINION</u> |

<u>Katharine S. Hayden, U.S.D.J.</u>

**I.    Introduction**

In this action, plaintiffs Gold Lion Steel LLC ("Gold Lion"), Robert Rebimbas, and Rimon Nahas (collectively, "plaintiffs") allege that defendant Global Merchant Cash, Inc., d/b/a Wall Street Funding ("Global Merchant") willfully entered into two usurious loan agreements in violation of the criminal usury statute, N.J.S.A. 2C:21-19, and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq*.  Global Merchant has moved (D.E. 9) to dismiss the complaint and compel arbitration pursuant to the terms of the arbitration clauses in the loan agreements.  The motion is fully briefed, and the Court decides it without oral argument.

**II.   Background**

According to the allegations in the complaint (D.E. 1), Gold Lion and Global Merchant entered into two loan agreement—one on January 14 and another on February 12, 2021—both of which were entitled "Agreement for the Purchase and Sale of Future Receipts."  (Compl. ¶ 13; *see* D.E. 9-3 and 9-4, Loan Agmts.)  The loan agreements were structured as "merchant cash advance" agreements, which typically involve a small business that "agrees to sell a percentage of its future receivables for a lump sum payment," and further "agrees to a repayment exceeding

1

the amount of the lump sum payment." (Compl. ¶ 9.) The repayments are generally made in daily installments, which "reflect[] a percentage of the business's estimated average daily receivables." (*Id.*)

Pursuant to the terms of the loan agreements, Gold Lion agreed to repay the January loan within 180 days at a 143% interest rate and the February loan within 164 days at a 164% interest rate. (*Id.* ¶¶ 14-17.) The loans were to be repaid in fixed daily payments of $270.28 and $520.44, respectively. (*Id.* ¶¶ 14, 16; *see* Loan Agmts. at 1.) Rebimbas and Nahas, Gold Lion's owners, guaranteed the loans as "Validity Guarantors," and agreed that Global Merchant could pursue a judgment against them if Gold Lion breached any "representation, warranty, and/or covenant" under the loan agreements. (Compl. ¶¶ 3-4, 29-32; Loan Agmts. at ¶ 35.)

The loan agreements contain an arbitration clause, which provides in pertinent part as follows:

> **Arbitration Agreement; Class Action Waiver.** This Arbitration Clause is an agreement between Seller [Gold Lion], Validity Guarantors [Rebimbas and Nahas] and Buyer [Global Merchant] to arbitrate disputes. "Disputes" is deemed to have the broadest possible meaning, and includes, without limitation, any and all disputes, claims or controversies, in law and in equity, between Seller and/or Validity Guarantors on the one hand, and Buyer on the other hand, arising out of or relating to this Agreement and/or (i) any claims of breach of contract, tort, misrepresentation, conversion, fraud, or unfair and deceptive trade practices, or (ii) any claim of a violation of any local, state or federal statute, regulation or ordinance, etc. At the request of either Seller and Validity Guarantor(s), on the one hand, or Buyer, on the other hand, **any Dispute shall be settled exclusively and finally by arbitration conducted in the County of New York, State of New York under the commercial arbitration rules of the Commercial Panel of the American Arbitration Association (the "AAA"), such arbitration to apply the laws of the State of New York (without giving effect to conflict of laws principles).** The Parties agree that, once any of them has elected to arbitrate, **binding arbitration is the exclusive method for resolving any and all Disputes, and that, under this Arbitration Clause, all Parties are waiving the right to a jury trial and the right to bring or participate in any class action in court or through arbitration (this is referred to below as the "Class Action Waiver").** Seller, Validity Guarantor(s) and Buyer hereby agree that the above-named forum shall be a convenient forum for any such arbitration proceeding or other controversy arising out of, related to,

2

> in connection with, or incident to this Agreement or any of the transactions it contemplates. Seller, Validity Guarantor(s) and Buyer waive, to the fullest extent permitted by law, (i) any objection that they may now or later have to such laying of venue, (ii) any objection to personal jurisdiction applying in any such venue, and (iii) any claim that any such arbitration proceeding or other controversy brought in such venue has been brought in an inconvenient forum.
>
> . . .
>
> **If a Party to this Agreement seeks to initiate arbitration, and another Party hereto refuses to arbitrate, the Party seeking to initiate arbitration may seek a court order enforcing this provision under which Buyer, Seller, and Validity Guarantor(s) have agreed to arbitrate.  In such event, the court shall determine any issues regarding the enforceability of this Arbitration Clause, including the validity and effect of the Class Action Waiver, but all other issues shall be decided by the arbitrator.**
>
> . . .
>
> The Parties acknowledge and agree that the Federal Arbitration Act . . . shall govern any arbitration under this Arbitration Clause.
>
> . . .
>
> This Arbitration Clause shall survive the termination, recission or payment in full of this Agreement.

(Loan Agmts. at ¶ 31 (emphases added).)  They also contain a New York choice-of-law clause, which provides:

> **Governing Law.** THIS AGREEMENT AND ALL TRANSACTIONS IT CONTEMPLATES, **INCLUDING ALL ISSUES CONCERNING THE VALIDITY OF THE AGREEMENT AND ANY TRANSACTIONS IT CONTEMPLATES, THE CONTRUCTION OF ITS TERMS, AND THE INTERPRETATION, PERFORMANCE AND ENFORCEMENT OF THE RIGHTS AND DUTIES OF THE PARTIES SHALL BE GOVERNED BY AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK** . . . THE PARTIES AGREE THE LAWS OF THE STATE OF NEW YORK SHALL GOVERN THE ENTIRE RELATIONSHIP BETWEEN AND AMONG THE PARTIES, INCLUDING WITHOUT LIMITATION, ALL ISSUES OR CLAIMS ARISING OUT OF, RELATING TO, IN CONNECTION WITH, OR INCIDENT TO THIS AGREEMENT AND ANY TRANSACTIONS IT CONTEMPLATES . . .

(Loan Agmts. at ¶ 29 (emphasis added).)[1]

Plaintiffs filed their complaint in this Court on May 4, 2021, relying on diversity jurisdiction. (D.E. 1.) In their two-count complaint, plaintiffs allege that Gold Merchant willfully entered into criminally usurious transactions in violation of the criminal usury statute and the New Jersey Consumer Fraud Act ("CFA"). (*See* Compl. ¶¶ 33-43.) Global Merchant has now moved (D.E. 9) to dismiss the complaint and compel arbitration, arguing that plaintiffs' claims clearly fall within the scope of the loan agreements' arbitration clauses, which are valid and enforceable regardless of whether the Court applies the law of New York (the choice-of-law state) or New Jersey (the forum state). (D.E. 9-1, Mov. Br.) Plaintiffs oppose the motion and urge the Court to apply New Jersey law, though they argue that the arbitration clauses are unenforceable regardless of which state's law applies. They further contend that even if the clauses are deemed enforceable, this action should be stayed pending conclusion of the arbitration. (D.E. 13, Opp. Br.) In reply, Global Merchant argues that the delegation provision in the arbitration clauses requires that the matter be dismissed. (D.E. 16, Reply Br.)

After the motion was fully briefed, the Court issued an order to show cause (D.E. 17) and requested written submissions addressing why this action should not be transferred to the United States District Court for the Southern District of New York in light of the requirement that arbitration be conducted outside the district "in the County of New York, State of New York." (*See* Loan Agmts. at ¶ 31). Plaintiffs expressed no opposition to transfer; Global Merchant urged the Court to find that dismissal is the appropriate remedy. (*See* D.E. 18, 19, Supp. Brs.)

---

[1] By executing the loan agreements, the parties also agreed to "irrevocably and unconditionally consent and submit to the jurisdiction of any state or federal court sitting in the County of New York, State of New York." (*Id.* at ¶ 30.) Global Merchant has not argued in the instant motion that the complaint should be dismissed for lack of jurisdiction.

**III.    Discussion**

    **A.  Choice-of-Law Analysis**

The Court must first determine which law applies to the instant motion because, as explained *supra*, the loan agreements contain a New York choice-of-law provision. (*See* Loan Agmts. at ¶ 29.) As a general matter, if an agreement "contains both a choice-of-law clause and an arbitration clause, the reviewing court will interpret the arbitration clause under the substantive law chosen by the parties." *GAR Disability Advocs., LLC v. Taylor*, 365 F.Supp.3d 522, 527 (D.N.J. 2019) (McNulty, J.) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63-64 (1995)); *see Abedi v. New Age Med. Clinic PA*, 2019 WL 1760845, at *3-4 (D.N.J. Apr. 18, 2019) (McNulty, J.) (analyzing arbitration clause under New York law, where agreement at issue contained both a New York choice-of-law provision and an arbitration clause). However, because plaintiffs argue that the choice-of-law provision should not apply here, the Court will conduct a traditional choice-of-law analysis.

In a diversity action, "a district court must apply the choice of law rules of the forum state to determine what law will govern each of the issues of a case." *Thabault v. Chait*, 541 F.3d 512, 535 (3d Cir. 2008). Under New Jersey's choice-of-law rules, "effect [is given] to contracting parties' private choice of law clauses unless they conflict with New Jersey public policy." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n. 21 (3d Cir. 2001); *Goldwell of New Jersey, Inc. v. KPSS, Inc.*, 622 F.Supp.2d 168, 193 (D.N.J. 2009) (same). Here, plaintiffs argue that New Jersey law should apply irrespective of the New York choice-of-law provision in the loan agreements because "application of New York law is contrary to New Jersey['s] fundamental interest in preventing usurious lending" as set forth in N.J.S.A. 2C:21-19. (*See* Opp. Br. at 8.) But both New Jersey and New York have a strong public policy against

5

usury. *See MacDonald v. CashCall, Inc*, 2017 WL 1536427, at *9 (D.N.J. Apr. 28, 2017) (Arleo, J.) (recognizing that "New Jersey has a strong public policy against usury"); *Ellison v. Evergreen Cemetery*, 266 N.J. Super. 74, 84 (App. Div. 1993) (same); *see also Madden v. Midland Funding, LLC*, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."). The cases cited by plaintiffs do not support a contrary finding. *See MacDonald*, 2017 WL 1536427, at *8-9 n. 9 (holding that application of Cheyenne River Sioux Tribe ("CRST") law would be contrary to New Jersey's fundamental interest in preventing usurious lending because, unlike New Jersey, CRST did not have any civil usury laws); *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 622-24 (3d Cir. 2009) (applying Pennsylvania law despite Delaware choice-of-law provision because, unlike Pennsylvania, Delaware had no usury law); *see also Dopp v. Yari*, 927 F. Supp. 814, 818 (D.N.J. 1996) (conducting choice-of-law analysis "in the absence of an effective choice of law [clause] by the parties"); *Turner v. Aldens, Inc.*, 179 N.J. Super. 596, 603 (App. Div. 1981) (applying New Jersey law despite Illinois choice-of-law provision where plaintiff's claims arose under New Jersey's Retail Installment Sales Act).

Accordingly, the Court will analyze the enforceability of the arbitration clauses under New York law.[2]

---

[2] In fact, New Jersey and New York utilize similar standards in determining the enforceability of arbitration agreements. *See Atalese v. U.S. Legal Services Group*, 219 N.J. 430, 442 (2014) (holding that "[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent," which requires "that the parties have an understanding of the terms to which they have agreed" (internal citations and quotations omitted)); *Waldron v. Goddess*, 61 N.Y.2d 181, 183-84 (1984) (a party will not be compelled to arbitrate "absent evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes" (internal citations and quotations omitted)); *see also Kozur v. F/V Atl. Bounty, LLC*, 2020 WL 5627019, at *6 (D.N.J.

### B. Standard of Review

When analyzing a motion to compel arbitration under New York law, the Court employs a standard of review "similar to the standard for a summary judgment motion." *Kutluca v. PQ New York Inc.*, 266 F.Supp.3d 691, 700 (S.D.N.Y. 2017). If an issue of fact exists "as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). Accordingly, the moving party must initially demonstrate that an agreement to arbitrate exists. *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order). In turn, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010). If the party moving to compel arbitration "has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried."[3] *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

The issue of whether plaintiffs' claims should be referred to arbitration is governed by the Federal Arbitration Act (the "FAA"). (*See* Loan Agmts. at ¶ 31 ("The Parties acknowledge and agree that the [FAA] . . . shall govern any arbitration under this Arbitration Clause.").) The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 127 (2d Cir. 2011) (internal citations and quotations omitted). Accordingly, the FAA "requires courts to

---

Aug. 18, 2020) (Rodriguez, J.) ("[N]o actual conflict between New Jersey law and New York law exists[] with regard to compelling arbitration.").

[3] Courts in the Third Circuit routinely apply a similar standard of review when addressing motions to compel arbitration under New Jersey law. *See Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 774-75 (3d Cir. 2013) ("Rule 56 furnishes the correct standard for ensuring that arbitration is awarded only if there is an express, unequivocal agreement to that effect.").

7

compel arbitration in accordance with the terms of an arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation." *Kutluca,* 266 F.Supp.3d at 699. To that end, courts must determine: (i) whether the parties have executed a valid agreement to arbitrate and, if so (ii) whether the dispute at issue falls within the scope of the agreement. *See ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002).

Here, plaintiffs do not appear to dispute the second factor—*i.e.*, that their claims fall within the scope of the arbitration clauses in the loan agreements. Instead, they argue that the arbitration clauses are unenforceable because they do not demonstrate a "clear, explicit and unequivocal" agreement to arbitrate. (Opp. Br. at 16-17; *see also id.* at 15-16 (arguing that the agreements are equally unenforceable under New Jersey law).)

      C.  Existence of the Parties' Agreement to Arbitrate

The question of whether parties have agreed to arbitrate is determined by state law. *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002); *see Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000) ("courts should generally apply state-law principles that govern the formation of contracts" in deciding whether a contractual obligation to arbitrate exists). Under New York law, "arbitration will not be compelled absent the parties' clear, explicit and unequivocal agreement to arbitrate." *Dixon v. NBCUniversal Media, LLC*, 947 F.Supp.2d 390, 399 (S.D.N.Y. 2013) (quoting *Manigault v. Macy's East LLC*, 318 F. App'x 6, 7-8 (2d Cir. 2009) (summary order)); *see Waldron*, 61 N.Y.2d at 183 (party will not be compelled to arbitrate without a "clear, explicit and unequivocal" agreement to arbitrate that does not "depend upon implication or subtlety"); *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 333 (1978) (parties will not be held to have chosen arbitration "in the absence of an express,

unequivocal agreement to that effect" (internal citations and quotations omitted)).  The party seeking to compel arbitration must demonstrate the existence of an agreement to arbitrate by a preponderance of the evidence.  *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993).

      Here, plaintiffs argue that the arbitration clauses do not satisfy this standard of proof because they contain no language "describing the arbitration process and how it differs from litigation," and fail to explain that arbitration is "mandatory and is the exclusive method of dispute resolution," or that acceptance "constitutes a waiver of each party's rights to have their claims resolved in a court."  (Opp. Br. at 16-17.)  These arguments fail under the express language of the arbitration clauses, which provide that "at the request of [any party], any Dispute shall be settled **exclusively and finally by arbitration**," and "once any of them has elected to arbitrate, **binding arbitration is the exclusive method for resolving any and all Disputes**." The clauses further clarify that "all Parties are **waiving their right to a jury trial** and the right to bring or participate in any class action[.]"  (Loan Agmts. at ¶ 31 (emphases added).)  This language demonstrates a clear and unequivocal agreement to arbitrate at any party's request, and a corresponding waiver of the right to a judicial forum.  *See Dynamic Int'l Airways, LLC. v. Air India Ltd.*, 2016 WL 3748477, at *9 (S.D.N.Y. July 8, 2016) (finding valid agreement to arbitrate where dispute resolution clause required "final, binding dispute resolution before a designated third-party"); *see also Ventoso v. Shihara*, 2019 WL 9045083, at *2-3 (S.D.N.Y. June 26, 2019) (finding that parties had executed a valid agreement to arbitrate where arbitration clause explained that all disputes would be resolved "through confidential binding arbitration" and that the parties thereby waived their rights to a trial by jury or to participate in a class

9

action). The Court easily finds the parties executed valid and enforceable agreements to arbitrate.[4]

\* \* \*

The arbitration clauses are valid and enforceable and therefore the dispute must be referred to arbitration. (*See* Loan Agmts. at ¶ 31 ("[T]he court shall determine any issues regarding the enforceability of this Arbitration Clause, including the validity and effect of the Class Action Waiver, but all other issues shall be decided by the arbitrator.").) However, the Court must assess whether it has the authority to compel arbitration in the state and county of New York as is required by the arbitration clauses, which is outside this district. If the answer is no, then the Court must determine whether it should dismiss this lawsuit or transfer it to the United States District Court for the Southern District of New York.

The FAA requires district courts to compel arbitration "in the manner provided for in such agreement," but also provides that the arbitration "shall be within the district in which the petition for an order directing such arbitration is filed." *See* 9 U.S.C. § 4. Accordingly, the

---

[4] These arbitration clauses would be equally enforceable under New Jersey law. In arguing otherwise, plaintiffs' reliance on *Atalese* and its progeny is misguided, as the arbitration clauses were executed by sophisticated business entities, not consumers. *See Discovery House v. Advanced Data Sys. RCM, Inc.*, 2020 WL 6938353, at \*5 (D.N.J. Nov. 25, 2020) (McNulty, J.) ("*Atalese* does not apply to major commercial contracts between sophisticated business entities."); *Albany Cty. Fasteners v. Epicor Software Corp.*, 2019 WL 397986, at \*3 n. 3 (D.N.J. Jan. 31, 2019) (Wigenton, J.) (plaintiffs' reliance on *Atalese* was "misplaced" because they are "sophisticated, commercial entities, not naïve consumers"). Even if *Atalese* did apply, the language is sufficient under *Atalese*, 219 N.J. at 447 (arbitration clause must explain that plaintiffs are "giving up [their] right to bring [their] claims in court *or have a jury resolve the dispute*" (emphasis added)); *see also GAR Disability Advocs., LLC v. Taylor*, 365 F.Supp.3d 522, 527 (D.N.J. 2019) (McNulty, J.) (arbitration clause must give "sufficient 'notice . . . that claims involving jury trials would be resolved instead through arbitration.'" (quoting *Martindale v. Sandvik*, 173 N.J. 76 (2002)).

Court is faced with what the Third Circuit has characterized as a "perplexing dilemma": it cannot "order arbitration strictly in accordance with the terms of the [arbitration clauses], as one portion of Section 4 seems to require, without contravening a second portion of Section 4." *Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974). When faced with this dilemma, courts in this Circuit have denied the motions to compel arbitration and either dismissed or transferred to the appropriate district. *See Gold Type Bus. Machines, Inc. v. Xplore Techs. Corp. of Am..*, 2006 WL 8457637, at *2 (D.N.J. Mar. 14, 2006) (Linares, J.) ("This Court cannot compel the parties to pursue arbitration in a forum outside of New Jersey. Since the arbitration clause provides for arbitration in the State of Delaware, this Court cannot compel arbitration and Plaintiff's Complaint must be dismissed."); *see also Shaffer v. Graybill*, 68 F. App'x 374, 377 (3d Cir. 2003) (where arbitration clause provided for arbitration in New York, directing district court to "dismiss the action or, after giving the parties the opportunity to be heard, transfer the action to an appropriate district court in New York where the court will presumably stay the action and direct arbitration").

Although the outcome seems "somewhat paradoxical," *Econo-Car,* 499 F.2d at 1394, the Court will follow this practice and deny Global Merchant's motion to compel and grant its motion to dismiss.[5]  An appropriate order will issue.

Date: February 28, 2022

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

---

[5] Where, as here, the plaintiff requests a stay of proceedings pending arbitration (*see* Opp. Br. at 17), the Court generally has no discretion to dismiss the case. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 [of the FAA] affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). However, because Global Merchant's motion to compel must be denied, plaintiffs' request for a stay of proceedings is moot.

11